## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. 1:16-cv-01008 |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | |
| MyCrew, LLC, | (1) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103; |
| MyCrew Drinkware, LLC, | (2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a); |
| NNRiverLife, LLC, | (3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a); |
| **Defendants.** | (4) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c); |
| | (5) COMMON LAW TRADE DRESS INFRINGEMENT; |
| | (6) COMMON LAW UNFAIR COMPETITION; |
| | (7) COMMON LAW MISAPPROPRIATION; AND |
| | (8) UNJUST ENRICHMENT. |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against MyCrew, LLC, MyCrew Drinkware, LLC, and NNRiverLife, LLC, (collectively "MyCrew" or "the MyCrew Entities"), alleges as follows:

**The Parties**

1.      YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 200, Austin, TX 78735.

2.      Upon information and belief, MyCrew, LLC is a limited liability company organized under the laws of the State of Virginia with a principal place of business at 270 Old Point Road, White Stone, VA, 22578.

3.      Upon information and belief, MyCrew Drinkware, LLC is a limited liability company organized under the laws of the State of Virginia with a principal place of business at 270 Old Point Road, White Stone, VA, 22578.

4.      Upon information and belief, NNRiverLife, LLC is a limited liability company organized under the laws of the State of Virginia with a principal place of business at 270 Old Point Road, White Stone, VA, 22578.

**Jurisdiction and Venue**

5.      This is an action for trade dress dilution, trade dress infringement, unfair competition and false designation of origin, misappropriation, and unjust enrichment.  This action arises under the Texas Business & Commerce Code, the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"), federal common law, and state common law, including the law of Texas.

6.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

7.      This Court has personal jurisdiction over the MyCrew Entities because, *inter alia*, they are doing business in the State of Texas, including in this District.  For example, and as discussed in more detail below, (i) the MyCrew Entities' principal website (https://www.facebook.com/mycrewcoolers/) and Amazon listings reach into Texas, including this District, on which the MyCrew Entities have advertised, promoted, offered for sale, sold, and/or distributed, and continue to advertise, promote, offer for sale, sell, and/or distribute

infringing products to customers and potential customers, (ii) the MyCrew Entities' tortious acts giving rise to this lawsuit and harm to YETI are occurring in the State of Texas, including in this District, (iii) the MyCrew Entities acted with knowledge that their unauthorized use of YETI's rights would cause harm to YETI in the State of Texas, and (iv) the MyCrew Entities' customers and/or potential customers reside in the State of Texas, including in this District.

8.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

### General Allegations – YETI's Trade Dress

9.      For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty coolers.  YETI created unique, distinctive, and non-functional designs to use with YETI's coolers.  YETI has extensively and continuously promoted and used these designs for years in the United States.  Through that extensive and continuous use, YETI's designs have become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to the source-identifying features of its cooler designs.  YETI also owns United States patents related to its coolers.

10.     In about 2008, YETI introduced its "Roadie®" and "Tundra®" coolers into the marketplace.[1]

11.     As a result of YETI's considerable investments and efforts, the Roadie® and Tundra® coolers are designed and built to provide extreme insulating capabilities and exceptional durability.  YETI has invested substantial resources in the design, development, manufacture, and marketing of its coolers.

12.     YETI has sold more than 400,000 Roadie® coolers more than 1,000,000 Tundra® coolers throughout the United States, including sales to customers in the State of Texas.  YETI has expended significant resources advertising and marketing its Roadie® and Tundra® coolers.

---

[1] YETI owns Trademark Registration No. 4,083,932 for "ROADIE" for portable coolers and Trademark Registration No. 4,083,930 for "TUNDRA" for portable coolers.

The design and features of YETI's Roadie® and Tundra® coolers have received widespread and unsolicited public attention. For example, the Roadie® and Tundra® coolers have been featured in numerous newspaper, magazine, and Internet articles directed to outdoor enthusiasts.

13.     The designs of the Roadie® and Tundra® coolers have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI. As a result of at least YETI's continuous and exclusive use of the designs of the Roadie® and Tundra® coolers, YETI's marketing, advertising, and sales of the coolers, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers, which consumers have come to uniquely associate with YETI.

14.     Illustrations 1 and 2 below show exemplary YETI Roadie® and Tundra® coolers.

**Illustration 1: Exemplary Image of a YETI Roadie® Cooler.**





**Illustration 2:  Exemplary Images of a YETI Tundra® 45 Cooler and a YETI Tundra® 65 Cooler.**

**YETI Tundra® 45 Cooler**

**YETI Tundra® 65 Cooler**

15.     YETI's trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers include, but are not limited to, the visual flow of the Tundra® and Roadie® coolers, the curves and lines in the Tundra® and Roadie® coolers, the design, style, and

appearance of these curves and lines in the Tundra® and Roadie® coolers, the visual connection and relationship between one or more of the curves and lines in the Tundra® and Roadie® coolers, and the style, design, and appearance of one or more design aspects of the Tundra® and Roadie® coolers, including but not limited to the design and appearance of the style line on the front of the cooler; the design and appearance of the style line on the back of the cooler; the design and appearance of the style line on each side of the cooler; the design and appearance of the "duck-bill" tapered front corners of the cooler; the design and appearance of the inverted style line above the name plate and below the lid; the design and appearance of the ledge around the perimeter of the cooler; the design and appearance of the rope handles, the design and appearance of the front, side and rear design of the feet of the cooler; the placement, design and appearance of the slots on the side, front and rear of the cooler; the design and appearance of the latches; the design and appearance of the name plate and name plate lettering; the placement, design, and appearance of the name plate on the front between the two front style lines; and the color contrast, color combinations, and shapes of features of the cooler, whether these design features are alone or in any combination with each other, including the overall look and appearance of the Roadie® and Tundra® coolers.

16.     For many years, YETI has also continuously engaged in the development, manufacture, and sale of premium, heavy-duty insulated drinkware.  YETI created unique, distinctive, and non-functional designs to use with YETI's insulated drinkware.  YETI has extensively and continuously promoted and used its designs in the United States and in Texas. Through that extensive and continuous promotion and use, *inter alia*, YETI's designs have become well-known indicators of the origin and quality of YETI's insulated drinkware.  YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to the source identifying features of its insulated drinkware designs.

17.     Specifically, YETI sells insulated drinkware products, the "YETI 30 oz. Rambler™ Tumbler," the "YETI 20 oz. Rambler™ Tumbler," and the "YETI Rambler™

Lowball," hereinafter referred to as "the Rambler™ Drinkware." As a result of YETI's considerable investments and efforts, the Rambler™ Drinkware are designed and built to provide extreme insulating capabilities and exceptional durability.  YETI has invested substantially in the design, development, manufacture, and marketing of the Rambler™ Drinkware.

18.    YETI has enjoyed significant sales of the Rambler™ Drinkware throughout the United States, including sales to customers in the state of Texas.  YETI has expended significant resources advertising and marketing the Rambler™ Drinkware.

19.    The Rambler™ Drinkware designs also have distinctive and non-functional features that identify to consumers that the origin of the Rambler™ Drinkware is YETI.  As a result of at least YETI's continuous and exclusive use of the Rambler™ Drinkware, YETI's marketing, advertising, and sales of the Rambler™ Drinkware, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Rambler™ Drinkware, which consumers have come to uniquely associate with YETI.

20.    Illustration 3 below shows an exemplary image of the YETI 30 oz. Rambler™ Tumbler sold by YETI.

| Illustration 3:  Exemplary Image of a YETI 30 oz. Rambler™ Tumbler |
| --- |



21.     YETI has trade dress rights in the overall look and appearance of the YETI 30 oz. Rambler™ Tumbler, including, but not limited to, the visual flow of the YETI 30 oz. Rambler™ Tumbler; the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the design, style, and appearance of these curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the visual connection and relationship between the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the style, design, and appearance of design aspects of the YETI 30 oz. Rambler™ Tumbler; the design and appearance of the walls of the YETI 30 oz. Rambler™ Tumbler; the design and appearance of the rim of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the style line around the base of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the top plane of the lid of the

YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 30 oz. Rambler™ Tumbler; the color contrast and color combinations of the YETI 30 oz. Rambler™ Tumbler and the tumbler lid on the YETI 30 oz. Rambler™ Tumbler; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the YETI 30 oz. Rambler™ Tumbler.

22.     Illustration 4 below shows an exemplary image of the YETI 20 oz. Rambler™ Tumbler sold by YETI.

| Illustration 4:  Exemplary Image of a YETI 20 oz. Rambler™ Tumbler |
| --- |
|  |

23.     YETI has trade dress rights in the overall look and appearance of the YETI 20 oz. Rambler™ Tumbler, including, but not limited to, the visual flow of the YETI 20 oz. Rambler™ Tumbler; the curves, tapers, and lines in the YETI 20 oz. Rambler™ Tumbler; the design, style and appearance of these curves, tapers, and lines in the YETI 20 oz. Rambler™ Tumbler; the visual connection and relationship between the curves, tapers, and lines in the YETI 20 oz. Rambler™ Tumbler; the style, design and appearance of design aspects of the YETI 20 oz. Rambler™ Tumbler; the design and appearance of the walls of the YETI 20 oz. Rambler™ Tumbler; the design and appearance of the rim of the YETI 20 oz. Rambler™ Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 20 oz. Rambler™ Tumbler; the design, appearance, and placement of the style line around the base of the YETI 20

oz. Rambler™ Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 20 oz. Rambler™ Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 20 oz. Rambler™ Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 20 oz. Rambler™ Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 20 oz. Rambler™ Tumbler; the color contrast and color combinations of the YETI 20 oz. Rambler™ Tumbler and the tumbler lid on the YETI 20 oz. Rambler™ Tumbler; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the YETI 20 oz. Rambler™ Tumbler.

24.     Illustration 5 below shows an exemplary image of a YETI Rambler™ Lowball sold by YETI.

**Illustration 5:  Exemplary Image of a YETI Rambler™ Lowball.**



25.     YETI has trade dress rights in the overall look and appearance of the YETI Rambler™ Lowball, including, but not limited to, the visual flow of the YETI Rambler™ Lowball; the curves, tapers, and lines in the YETI Rambler™ Lowball; the design, style and appearance of these curves, tapers, and lines in the YETI Rambler™ Lowball; the visual connection and relationship between the curves, tapers, and lines in the YETI Rambler™ Lowball; the style, design and appearance of design aspects of the YETI Rambler™ Lowball; the design and appearance of the walls of the YETI Rambler™ Lowball; the design and appearance of the rim of the YETI Rambler™ Lowball; the design, appearance, and placement of the taper in the side wall of the YETI Rambler™ Lowball; the design, appearance, and placement of the style line around the base of the YETI Rambler™ Lowball; the design, appearance, and

10

placement of the tab on the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the drinking opening on the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the top plane of the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the side walls of the lid of the YETI Rambler™ Lowball; the color contrast and color combinations of the YETI Rambler™ Lowball and the tumbler lid on the YETI Rambler™ Lowball; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the YETI Rambler™ Lowball.

26.     As a result of YETI's exclusive, continuous and substantial use, advertising, and sales of cooler and insulated drinkware products bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of YETI.

### General Allegations – MyCrew's Unlawful Activities

27.     On information and belief, the MyCrew Entities are owned and/or operated by Graylend Horn and Krystal Horn, who also operate a hardware store located in Kilmarnock, Virginia and are familiar with YETI and its products because their hardware store sold YETI products that are the subject of this suit.

28.     On information and belief, some or all the MyCrew Entities were formed to procure and sell the infringing products discussed in this Complaint.

29.     On information and belief, the MyCrew Entities' conduct described in this Complaint has been with full knowledge (a) of YETI's products and intellectual property rights, (b) that YETI is based in Austin, Texas, and (c) that the infringing acts and violation of YETI's rights would cause harm to YETI in Texas and this District.

30.     The MyCrew Entities have purposefully advertised, promoted, offered for sale, sold, and/or distributed, and continue to advertise, promote, offer for sale, sell, and/or distribute coolers and tumblers that infringe on YETI's rights, including the rights protected by YETI's trade dress.  On information and belief, the MyCrew Entities are also making such infringing

products and/or importing such infringing products into the United States.   The MyCrew Entities' infringing products are in the same sizes as YETI's own products, and they are confusingly similar imitations of YETI's own products.   The MyCrew Entities' actions have all been without the authorization of YETI.

31.     Illustration 6 below shows an example of MyCrew's infringing cooler products.

| Illustration 6:  Exemplary Images of an Infringing Cooler Product |
| :---: |



32.     Illustrations 7-9 below show examples of MyCrew's infringing tumbler products.

| **Illustration 7:  Exemplary Image of MyCrew's 30 oz. Infringing Product.** |
|---|
|  |

| **Illustration 8:  Exemplary Image of MyCrew's 20 oz. Infringing Product.** |
|---|
|  |

| Illustration 9:  Exemplary Image of MyCrew's 10 oz. Infringing Product. |
|:---:|
|  |

33.     As a result of the MyCrew Entities' activities related to the infringing products, there is a strong likelihood of confusion between MyCrew and its products on the one hand, and YETI and its products on the other hand.

34.     YETI used YETI's trade dress extensively and continuously before the MyCrew Entities began advertising, promoting, selling, offering to sell, or distributing the MyCrew Entities' infringing products.  Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before the MyCrew Entities commenced their unlawful use of YETI's trade dress.

35.     As discussed in more detail below, the MyCrew Entities' actions are unfair and unlawful.

**Count I:**
**Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103**

36.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 35 as though fully set forth herein.

37.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 16.103 of the Texas Business & Commerce Code.

38.     YETI's trade dress is entitled to protection under Texas law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that

extensive and continuous use, YETI's trade dress has become a famous and well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products in the United States and in the State of Texas, and YETI's trade dress is widely recognized by the public throughout Texas as a designation of the source of YETI's cooler and insulated drinkware products. YETI's trade dress also acquired substantial secondary meaning in the marketplace, including in the State of Texas. Moreover, YETI's trade dress became famous and acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

39.     MyCrew's use of YETI's trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler and insulated drinkware products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

40.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

41.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious. MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

42.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least MyCrew's profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code §§ 16.103 and 16.104.

**Count II:**
**Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

43.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 42 as though fully set forth herein.

44.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing YETI's trade dress.  MyCrew's use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake or deception as to the affiliation, connection, and/or association of MyCrew with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

45.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

46.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

47.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated, for

16

example, in Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

48.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least MyCrew's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III:**
**Unfair Competition and False Designation of Origin Under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

49.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes unfair competition and false designation of origin, at least because MyCrew has obtained an unfair advantage as compared to YETI through its use of YETI's trade dress and/or colorable imitations thereof and because such use is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

51.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

17

52.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

53.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

54.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least MyCrew's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

55.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

56.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violates § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI's cooler and insulated drinkware products.   YETI's trade dress has also acquired substantial secondary meaning in the

18

marketplace.   Moreover, YETI's trade dress became famous and acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

58.     MyCrew's use of YETI's trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler and insulated drinkware products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

59.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

60.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

61.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least MyCrew's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count V:**
**Common Law Trade Dress Infringement**

62.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because MyCrew's use of YETI's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

64.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

65.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

66.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

67.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, MyCrew's profits, punitive damages, costs, and reasonable attorney fees.

**Count VI:**
**Common Law Unfair Competition**

68.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of MyCrew's goods and/or by simulating YETI's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.  MyCrew has also interfered with YETI's business.

70.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

71.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.

72.     On information and belief, MyCrew's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced

at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

73.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, MyCrew's profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Misappropriation**

74.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 73 as though fully set forth herein.

75.    MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law misappropriation.

76.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  MyCrew has wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because MyCrew was not burdened with the expenses incurred by YETI.  MyCrew has commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

77.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its

unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

78.     MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products.  Moreover, as a result of its misappropriation, MyCrew has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill of YETI's trade dress and its cooler and tumbler products.

79.     MyCrew's misappropriation of YETI's trade dress has been intentional, willful, and malicious.  MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

80.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, MyCrew's profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Unjust Enrichment**

81.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 80 as though fully set forth herein.

82.     MyCrew's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute unjust enrichment, at least because MyCrew has wrongfully obtained benefits at YETI's expense.  MyCrew has also, *inter alia*, operated with an undue advantage.

83.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  MyCrew has wrongfully used and is wrongfully using YETI's trade dress and/or colorable imitations thereof in competition with YETI, and has gained and is

23

gaining a wrongful benefit by undue advantage. MyCrew has not been burdened with the expenses incurred by YETI, yet MyCrew is obtaining the resulting benefits for its own business and products.

84.    YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler and insulated drinkware products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before MyCrew commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the infringing products.

85.    MyCrew's use of YETI's trade dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler and tumbler products. YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. MyCrew has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

86.    MyCrew's unjust enrichment at YETI's expense has been intentional, willful, and malicious. MyCrew's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress, as demonstrated in, for example, Illustrations 6, 8, and 9 above, and by MyCrew's continuing disregard for YETI's rights.

87.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least MyCrew's profits.

**Demand for Jury Trial**

88.     YETI hereby demands a jury trial on all issues so triable.

**Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.      Judgment that MyCrew has (i) diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (ii) infringed YETI's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (v) violated YETI's common law rights in YETI's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; and (viii) been unjustly enriched at YETI's expense, and that all of these wrongful activities by MyCrew were willful;

2.      An injunction against further infringement and dilution of YETI's trade dress, further acts of unfair competition, misappropriation, and unjust enrichment by MyCrew, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress, pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code §§ 16.103 and 16.104;

3.      An Order directing MyCrew to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.      An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress in MyCrew's possession or control, (iii) all plates, molds, and other means of making the infringing products in MyCrew's possession, custody, or control, and

(iv) all advertising materials related to the infringing products in MyCrew's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing MyCrew to publish a public notice providing proper attribution of YETI's trade dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.      An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.      An award of MyCrew's profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 11125(c), 1116, and 1117 and Tex. Bus. & Com. Code §§ 16.103 and 16.104; and

9.      Such other and further relief as this Court deems just and proper.


Dated:  August 26, 2016                    Respectfully submitted,



                              By: /s/Sean J. Jungels
                              Kevin Meek
                              Texas Bar No. 13899600
                              kevin.meek@bakerbotts.com
                              Baker Botts L.L.P.
                              98 San Jacinto Blvd., Suite 1500
                              Austin, Texas 78701
                              Telephone: (512) 322-5471
                              Facsimile: (512) 322-3622

                              Joseph J. Berghammer (admitted in the Western
                              District of Texas)
                              Illinois Bar No. 6273690
                              jberghammer@bannerwitcoff.com
                              J. Pieter van Es (admitted in the Western District of
                              Texas)

Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Sean J. Jungels (admitted in the Western District of
Texas)
Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**